UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTHONY JAMES LEO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPFOLIO, INC.,<br><br>Defendant. | CASE NO. 17-5771 RJB<br><br>ORDER ON DEFENDANT'S MOTION TO STRIKE AND/OR DISMISS |

This matter comes before the Court on Defendant's Motion to: (1) Dismiss or Strike Count I Class Claim and Class Allegations, and (2) Dismiss Counts II, III, and IV of the Complaint. Dkt. 13. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

Filed on September 27, 2017, this putative class action alleges that Defendant AppFolio, Inc. ("AppFolio"), a consumer reporting agency, fails to: accurately report consumer information, disclose the true source of its public records information, and disclose the identity of each person (including end-users) that have procured a consumer's report, all contrary to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"). Dkt. 1. Defendant's motion to

ORDER ON DEFENDANT'S MOTION TO STRIKE AND/OR DISMISS - 1

1 strike or dismiss the Count I class allegations and claims and dismiss the remaining counts in the
2 Complaint (Dkt. 13) should be denied.

### I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

**A. BACKGROUND ON APPFOLIO**

According to the Complaint, AppFolio sells consumer reports (sometimes called credit reports) for residential screening purposes. Dkt. 1, at 2. It asserts that AppFolio's "standard practice is to use only partial matching and not full identifying information in preparing consumer reports," leading to mixed files – reports which include information about people who are not the subjects of the report. Dkt. 1, at 3. This failure to require a match to full identifying information is allegedly employed by AppFolio to maximize the number of reports it generates and sells. *Id*. The Complaint asserts that AppFolio intentionally uses these procedures to "maximize the likelihood of a match between any inquiry and some data in its database about one or more consumers, purposefully prioritizing quantity of matches over accuracy." *Id.,* at 4.

The Complaint alleges that AppFolio obtains its public records information from private vendors and does not retrieve public records itself. Dkt. 1, at 4. "Nevertheless, . . . AppFolio falsely lists the names and addresses of courthouses or other government offices as the true 'source' of its public record information" in the reports. *Id.* The Complaint asserts that AppFolio only receives a distilled version of the public records from its vendors, which frequently have "numerical and other factual errors, do not contain the most updated status of the public records, invert the debtor and creditor, and are placed in the wrong consumer's file." *Id.* It alleges that AppFolio does not disclose the true sources of the public records information to consumers despite the fact that "[d]isclosure of the true source of a [consumer reporting agency's ("CRA")] information is vital so that certain credit reporting errors that originate at the source

1 | can be corrected and so that consumers always know who is furnishing important credit information about them." *Id.*

The Complaint also asserts that AppFolio keeps records of each person, including end-users, who have requested reports. Dkt. 1, at 5. It maintains that AppFolio does not disclose this information to consumers. *Id.,* at 6.

### B. BACKGROUND FACTS REGARDING PLAINTIFF ANTHONY JAMES LEO

According to the Complaint, around October 16, 2016, Plaintiff Anthony James Leo applied to rent an apartment with Aspen Real Estate & Property Management Group NW, Inc. ("Aspen"). Dkt. 1, at 6. As a part of his application, Mr. Leo provided his full name, address, social security number, and date of birth. *Id.* The next day, Aspen ordered an AppFolio consumer tenant screening report on Mr. Leo and sent AppFolio all the identifying information that Mr. Leo provided. *Id.* Mr. Leo asserts that "[d]espite having been provided with [Mr. Leo's] name, address, social security number, and date of birth, [AppFolio] did not use all of those personal identifiers in determining whether [Mr. Leo] had a public record history." *Id.*

The report AppFolio sold Aspen stated that Mr. Leo "had an eviction record from 2015, even though the eviction defendant was 'Tanya Lee' and occurred in West Greenville, South Carolina." *Id.* The Complaint asserts that "the eviction record belongs to an unrelated person and [Mr. Leo] does not have a civil judgment for an eviction from 2015 in West Greenville, South Carolina." *Id.,* at 7. The Complaint alleges that this mixing of files was a result of AppFolio's "use of an imprecise name matching procedure to match eviction records [Tanya Lee's] to apartment rental applicants such as Plaintiff [Anthony James Leo]." *Id.*

On October 17, 2016, Aspen denied Mr. Leo's application "in substantial part because the AppFolio report included a record of a recent eviction." Dkt. 1, at 7. Concerned, Mr. Leo

alleges in his Complaint that he "contacted the West Greenville Summary Court on several occasions over the next two-week period, and it was confirmed to him that the eviction did not belong to him, but to an unrelated individual named 'Tanya Lee.'" *Id.*

In April 2017, Mr. Leo wrote AppFolio, and requested a copy of his file. *Id.* The Complaint alleges that in May 2017, AppFolio sent Mr. Leo a copy of his file, and reported that the source for the 2015 eviction was "Court West Greenville, Greenville." *Id.*, at 7. The Complaint asserts that AppFolio "did not obtain any public record information about Plaintiff or about any consumer from a court in West Greenville, South Carolina," but, instead, from a private vendor. *Id.* Mr. Leo maintains that "pursuant to its systematic practice, Defendant failed to disclose to Plaintiff any information about its vendor, Defendant's true source of the public record at issue." *Id.,* at 9. Mr. Leo asserts that AppFolio also failed to disclose the identity of each person, including end-users, that procured a report about him. *Id.* Mr. Leo maintains that AppFolio "deprived [him] of this valuable information according to its standard practice and procedure." *Id.,* at 8.

Mr. Leo asserts that, as a result of AppFolio's conduct, he has suffered (a) a lost rental opportunity, (b) harm to his reputation, and (c) emotional distress. *Id.*

Mr. Leo proposes the following classes:

> (1) All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, about whom AppFolio furnished a consumer report which included one or more record(s) which did not pertain to the person who was the subject of the report, as a result of AppFolio's matching procedures;
>
> (2) All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, about whom AppFolio furnished a consumer report which included one or more

record(s) for which the first or last name on the record was different from the first or last name of the consumer who was the subject of the report.

(3) All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action to whom AppFolio provided a credit file disclosure which did not identify the end-user(s) to whom AppFolio had sold a consumer report within the previous twelve months.

(4) All persons residing in the United States (including all Territories and other political subdivisions of the United States), beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, (a) who requested their consumer file from AppFolio or any of its affiliated companies or subsidiaries, and (b) to whom AppFolio provided a response that did not include any reference to its public records vendor as the source of public records information within the consumer's file disclosure.

Dkt. 1, at 8-9. He alleges that each of the requirements in Fed. R. Civ. P. 23 are met. *Id.,* at 9-11.

Mr. Leo brings the following claims for himself and for the putative class members: "Count I – 15 U.S.C. § 1681e(b)," asserting that AppFolio is "liable for failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it sold;" "Count II - 15 U.S.C. § 1681g(a)(2)," maintaining that AppFolio is "liable for failing to accurately and clearly disclose the true source of its public record information in consumer file disclosures;" "Count III – 1681g(a)(1)," alleging that AppFolio is "liable for failing to clearly and accurately disclose all information in the consumer's file at the time of a consumer's request;" and "Count IV - 15 U.S.C. § 1681g(a)(3)(A)(ii)," asserting that AppFolio "is liable for failing to accurately and completely disclose, upon the request of a consumer, the identity of each person including end-users who have requested consumer file disclosures." Dkt. 1, at 11-12. Mr. Leo seeks an order certifying the class; actual, statutory and punitive damages for himself and the class; and attorneys' fees and costs. *Id.,* at 12.

**C. PENDING MOTION**

Pursuant to Fed. R. Civ. P. 12 (f), AppFolio now moves to strike or dismiss all Count I class allegations and claims in the Complaint because the § 1681e (b) classes require fact intensive inquiries, and so are not certifiable because they cannot satisfy the predominance and superiority requirements of Rule 23. Dkt. 13. Pursuant to Rule 12 (b)(1), AppFolio moves to dismiss Mr. Leo's remaining claims, all premised on § 1681g, asserting that he lacks standing to assert those claims. *Id.* Mr. Leo responded and opposes the motion. Dkt. 30. AppFolio filed a reply. Dkt. 31. The motion is ripe for review.

## II. DISCUSSION

### A. STANDARD ON MOTION TO DISMISS/SRIKE UNDER FED. R. CIV. P. 12 (f)

Under Fed. R. Civ. P. 12 (f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "The function of a 12 (f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)(*internal citations omitted*). In the Ninth Circuit, "Rule 12 (f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Id.,* at 974–75.

### B. MOTION TO STRIKE OR DISMISS THE COUNT I CLASS ACTION ALLEGATIONS AND CLAIMS

AppFolio argues that the class allegations and claims for violation of § 1681e (b) (Count I) should be stricken or dismissed from the Complaint under Rule 12 (f) because it is apparent from the face of the Complaint that Plaintiff cannot meet Rule 23 (b)(3)'s requirements for certification on this claim. Dkt. 13.

AppFolio does not claim that these portions of the Complaint constitute an "insufficient defense," are "redundant," or "scandalous." Which leaves Rule 12 (f)'s "immaterial" or "impertinent" matter as the basis for the motion. "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone*, at 974 (*internal citation and quotation marks omitted*)). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* AppFolio's argument, that the claim for violation of § 1681e (b) and the class allegations that support it should be stricken as "immaterial" and or "impertinent" requires examination of both the requirements of Rule 23 (b)(3) and of the FCRA's § 1681e (b).

In order to obtain class certification, Plaintiffs must meet the four requirements of Rule 23 (a): numerosity, commonality, typicality and adequacy. Fed. R. Civ. P. 23 (a)(1)-(4). In addition, to obtain certification of a class action for money damages under Rule 23 (b)(3), a plaintiff must "establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)(*internal citations omitted*). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (*internal quotation and citation omitted*). If "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23 (b)(3) even though other important matters will have to be tried

separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* In determining superiority, courts must consider the four factors of Rule 23(b)(3):

>  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>  (D) the likely difficulties in managing a class action.

*Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id*.

Turning next to the FCRA, "Congress enacted the [FCRA], 15 U.S.C. §§ 1681–1681x, in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009)(*quoting Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)). "These consumer oriented objectives support a liberal construction of the FCRA." *Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir. 1995)(*internal citations omitted*).

The FCRA's § 1681e (b) provides that: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e (b). "In order to make out a prima facie violation under § 1681e (b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995). "An agency can escape liability if it establishes that an inaccurate report was generated

despite the agency's following reasonable procedures. The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

AppFolio insists that the two proposed classes that make § 1681e (b) claims would have to prove that each and every class member had a report that included an actual inaccuracy. Dkt. 13. It asserts that the Court would be forced to examine the public records on each report and determine if they were actually inaccurately reported. It maintains, then, that such individualized inquires will overwhelm the common issues and prevent Plaintiff from satisfying the predominance and superiority requirements of Rule 23 (b)(3). *Id.*

AppoFolio's motion to strike all Count I class allegations and claims should be denied. There is no showing that the allegations or claims are "immaterial matter" - that they have "no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone*, at 974 (*internal citation and quotation marks omitted*)). It is not clear at this stage in the proceedings that the Court will be examining large volumes of public records. At least one of the classes is straight forward – the question is whether the names on the report match. The question of accuracy would be rather easy. Rule 23 (b)(3) "does not require a plaintiff seeking class certification to prove that each element of [their] claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469, 133 S. Ct. 1184, 1196 (2013)(*internal quotation omitted*). Further, "[l]iability under § 1681e (b) is predicated on the reasonableness of the [AppFolio]'s procedures in obtaining credit information." *Guimond,* at 1333.

Moreover, there is no showing that the Count I class allegations and claims are "impertinent" under Rule 12 (f). They do not "consist[] of statements that do not pertain, and are

not necessary, to the issues in question." *Whittlestone*, at 974. AppoFolio's motion is premature and seeks to circumvent the more thorough review to be conducted after the motion for certification is filed. AppFolio's motion to strike or dismiss the class claim for violation of § 1681e (b) and the supporting allegations should be denied.

### C. STANDARD FOR MOTION TO DISMISS UNDER RULE 12 (b)(1) LACK OF SUBJECT MATTER JURISDICTION FOR LACK OF STANDING

A complaint must be dismissed under Fed. R. Civ. P. 12 (b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F. Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant). When considering a motion to dismiss pursuant to Rule 12 (b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

"Article III of the United States Constitution limits federal court jurisdiction to actual, ongoing cases or controversies." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010)(*internal quotations and citations omitted*). "A case or controversy must exist at all stages of review, not just at the time the action is filed." *Id.*

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017). "At an irreducible constitutional minimum, standing requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010)(*citing Lujan,* at 560-61).

"Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

**D. MOTION TO DISMISS COUNTS II-IV – VIOLATIONS OF 1681g – FOR LACK OF STANDING**

Section 1681g (a) provides, in relevant part, "every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer: (1) all information in the consumer's file at the time of the request. . . (2) the sources of the information," and "(3) identification of each person (including each end-user). . . that procured the report." 15 U.S.C. § 1681g (a)(1)-(3).

AppFolio asserts that Mr. Leo fails to identify a concrete injury because he alleges only a "technical violations" of § 1681g and so was not "actually" harmed. Dkt. 13. AppFolio cites to the U.S. Supreme Court decision in *Spokeo v. Robins,* 136 S. Ct. 1540 (2016) ("*Spokeo II*").

*Spokeo* was filed by a consumer who alleged that a website operator violated § 1681e (b) of the FCRA when it posted inaccurate information about him on the internet and offered more information for a fee. In *Spokeo II*, the U.S. Supreme Court held that the Ninth Circuit Court of Appeals properly considered whether the plaintiff's alleged § 1681e (b) injury was particularized, but failed to determine whether the plaintiff suffered a concrete injury. *Spokeo v. Robins,* 136 S. Ct. 1540 (2016). The Court noted that the plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation" of § 1681e (b). *Id.* at 1550. The case was remanded to the Ninth Circuit Court of Appeals to make a determination of whether the plaintiff had asserted a harm sufficiently "concrete" to satisfy the injury in fact requirement of Article III. *Id.*

On August 15, 2017 the Ninth Circuit Court of Appeals issued its decision (*Spokeo III*) and found that the plaintiff had identified a concrete harm. 867 F.3d 1108 (9th Cir. 2017)(*cert. denied*, 17-806, 2018 WL 491554 (U.S. Jan. 22, 2018)). The *Spokeo III* court found that "Congress established the FCRA provisions at issue to protect consumers' concrete interests." *Id.,* at 1113. The court noted that the FCRA "was crafted to protect consumers from the transmission of inaccurate information about them in consumer reports." *Id.* It remarked that "[t]o achieve this end, the FCRA imposes on consumer-reporting agencies a host of procedural requirements concerning the creation and use of consumer reports." *Id.,* at 1113-1114. The Ninth Circuit held that the interests protected by the FRCA's procedural requirements are "real" and not legal creations. *Id.* The Ninth Circuit found that:

> We have little difficulty concluding that these interests protected by FCRA's procedural requirements are "real," rather than purely legal creations. To begin, the Supreme Court seems to have assumed that, at least in general, the dissemination of false information in consumer reports can itself constitute a concrete harm. Moreover, given the ubiquity and importance of consumer reports in modern life—in employment decisions, in loan applications, in home

> purchases, and much more—the real-world implications of material inaccuracies in those reports seem patent on their face. Indeed, the legislative record includes pages of discussion of how such inaccuracies may harm consumers in light of the increasing importance of consumer reporting nearly fifty years ago. In this context, it makes sense that Congress might choose to protect against such harms without requiring any additional showing of injury. The threat to a consumer's livelihood is caused by the very existence of inaccurate information in his credit report and the likelihood that such information will be important to one of the many entities who make use of such reports. Congress could have seen fit to guard against that threat (and, for example, against the uncertainty and stress it could cause to the consumer's life), especially in light of the difficulty the consumer might have in learning exactly who has accessed (or who will access) his credit report.
> As other courts have observed, the interests that FCRA protects also resemble other reputational and privacy interest that have long been protected in the law.

*Id.*, at 1114. The *Spokeo III* court then examined whether the plaintiff alleged FCRA violations "that actually harm, or at least that actually create a material risk of harm, to this concrete interest." *Id.*, at 1115 (*internal quotations omitted*). The court concluded that the consumer's claim, that Spokeo prepared and published an inaccurate report on the internet about him (which contained substantial inaccuracies including his age, marital status, that he was employed, has a graduate degree and was wealthier than he was), implicates the consumer's concrete interests. *Id.*, at 1116.

AppFolio's motion to dismiss Mr. Leo's claims for violations of § 1681g for lack of standing should be denied. As in Spokeo *III,* the undersigned has little difficulty determining that the FCRA's §1681g provisions were also created to protect consumer's concrete interests in the accurate dissemination of information about them; it is the means by which a consumer learns what is in the report, who supplied the information, and the parties that requested the reports. This gives the consumer the opportunity to see if the information on the report is correct. If it is not, these provisions provide a means to contact the source of the information and

ORDER ON DEFENDANT'S MOTION TO STRIKE AND/OR DISMISS - 13

see that it is corrected; they also allow the consumer to determine the potential users of the report and ensure that they also receive corrections.

Mr. Leo has asserted a harm sufficiently "concrete" to satisfy the injury in fact requirement of Article III in regard to his claims under §1681g. Mr. Leo alleges that when he requested his report, AppFolio did not identify the true source of the 2015 eviction information, a private vendor, but instead listed "Court West Greenville, Greenville." By failing to properly identify the source of the information, Mr. Leo properly points out that he was not easily able to correct the misreporting. He also asserts that AppFolio did not disclose the end-users or other people who requested the report. By failing to disclose each end-user, he was prevented from correcting the information given to them. While AppFolio points out that some errors would not be actionable because they did not harm the consumer, if Mr. Leo's allegations are to be believed, the information it sent to him thwarted his ability to monitor his file and correct inaccurate information about his having been involved in eviction proceedings, an injury that these FCTA procedural requirements were enacted to avoid. This is sufficient.

**E. CONCLUSION**

AppFolio's Motion to: (1) Dismiss or Strike Count I Class Claim and Class Allegations, and (2) Dismiss Counts II, III, and IV of the Complaint (Dkt. 13) should be denied. Nothing in this order should be construed as a ruling on any of the elements required for Mr. Leo to obtain certification of the class. Such a ruling is premature.

## III. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion to: (1) Dismiss or Strike Count I Class Claim and Class Allegations, and (2) Dismiss Counts II, III, and IV of the Complaint (Dkt. 13) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 30th day of January, 2018.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge